| | |
|---|---|
| TAUREAN SMALL, <br><br> Plaintiff, <br><br> v. <br><br> SMITHFIELD FOODS INC., *et al.*, <br><br> Defendants. | MEMORANDUM AND RECOMMENDATION |

This matter is before the court on *pro se* Plaintiff Taurean Small's ("Small") application to proceed *in forma pauperis*, [DE-2], and for frivolity review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), [DE-1]. Small has demonstrated appropriate evidence of inability to pay the required court costs, and his FMLA retaliation claim against Defendant Smithfield Foods, Inc. is not clearly frivolous. Accordingly, it is recommended that the application to proceed *in forma pauperis* be allowed; that the FMLA retaliation claim against Smithfield Foods, Inc. be allowed to proceed at this time; and that all claims against Sedgwick Claims Management Services, Inc. and Allied Universal Security Services, and the state law claims against Smithfield, be dismissed.

## I. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court shall dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from a defendant immune from such recovery. 28 U.S.C. § 1915(e)(2)(B)(i–iii); *see Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (explaining Congress enacted predecessor statute 28 U.S.C. § 1915(d) "to prevent abuse of the judicial system by parties who bear none of the ordinary financial disincentives to filing meritless claims"). A case is frivolous if it lacks an arguable basis

in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) ("Examples of frivolous claims include those whose factual allegations are 'so nutty,' 'delusional,' or 'wholly fanciful' as to be simply 'unbelievable.'"). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327–28.

In determining whether a complaint is frivolous, "a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the Plaintiff's allegations." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Rather, the court may find a complaint factually frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* "The word 'frivolous' is inherently elastic and not susceptible to categorical definition.... The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." *Nagy v. Fed. Med. Ctr. Butner*, 376 F.3d 252, 256–57 (4th Cir. 2004) (some internal quotation marks omitted). In making its frivolity determination, the court may "apply common sense." *Nasim v. Warden., Md. House of Corr.*, 64 F.3d 951, 954 (4th Cir. 1995).

In order to state a claim on which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . .'" *Twombly*, 550 U.S. at 555. While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Id.*

2

In the present case, Small is proceeding *pro se* and pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See id.*; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994). However, the principles requiring generous construction of *pro se* complaints are not without limits; the district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. DISCUSSION

Small brings this action against Smithfield Foods Inc., Sedgwick Claims Management Services, Inc., and Allied Universal Security Services (collectively, "Defendants") for violations of the Family Medical Leave Act ("FMLA") and North Carolina law. The complaint consists of a bare-bones, fill-in-the-blank form, but the allegations contained therein are fleshed out more fully in several verbose "exhibits" attached to it.[1] [DE-1]; [DE-1-1 to -1-19]. Viewing these documents together, Small appears to allege, *inter alia*, that on November 15, 2024, he was approved for sporadic FMLA leave by Smithfield Foods, his former employer, via Sedgwick Claims Management Services, through November 14, 2025 due to a health condition, then on February 25, 2025 for FMLA leave spanning from February 17, 2025 to April 15, 2025. [DE-1-13] at 3, 6. While on leave, Small experienced "substantial emotional distress . . . from the credible and escalating fear of retaliation . . . . This anticipatory distress was grounded in observable patterns

---

[1] The court may consider these documents when determining whether Small's complaint states a plausible claim for relief. *See Holley v. Combs*, No. 22-6177, 2025 WL 1035288, at *2 (4th Cir. Apr. 8, 2025) (citing *Garrett v. Elko*, 120 F.3d 261, 1997 WL 457667, at *1 (4th Cir. 1997) ("[I]n order to determine whether the claim of a *pro se* plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff.")).

3

of employer hostility, lack of reassurance regarding job security, and a persistent absence of procedural support during medical leave." [DE-1-2]. Then, upon returning to work, Small's "worst fears were realized. Within days, the employer initiated punitive action without cause." *Id.* Specifically, Small's official return-to-work date was April 18, 2025, however, on April 15, 2025, when he attempted to reactivate his employee badge, he was "confronted by an armed Allied Universal guard who lacked appropriate ADA training or authority. Just two days later, on April 17, 2025—one day prior to the scheduled return—[Small] was terminated" and his employee badge was seized from him.[2] [DE-1-3]; [DE-1-6]. According to Small, he has been "effectively blacklisted" from any future employment with Smithfield Foods since then, and all records related to his approved FMLA leave have been erased or "rendered inaccessible" from Smithfield's internal system. [DE-1-4]; [DE-1-5]. Through this action, Small seeks $7 million in compensatory damages for lost wages, emotional harm, reputational damages, and related losses; liquidated damages pursuant to 29 U.S.C. 2617(a)(1)(A)(iii) for willful violations of the FMLA; punitive damages for intentional and reckless conduct where authorized by law; attorney's fees and costs pursuant to statute; pre and post-judgment interest as permitted by law; leave to amend to assert ADA claims upon issuance of an EEOC right-to-sue letter; and any other relief the court deems just and proper. [DE-1] at 4–5.

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). To state a claim for interference with an FMLA benefit, a plaintiff must show that "(1)

---

[2] Documentation attached by Small to the complaint indicates that the official reason provided for his separation was that he violated a reasonable and known company policy by using abusive language towards a fellow employee. *See* [DE-1-14] at 4–5, 10. However, reading the complaint charitably, Small arguably contends that the incident with the security guard did not occur as described by Smithfield, and the reason given by the company for his termination was pretextual.

he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). Benefits under the FMLA include "a total of 12 workweeks of leave during any 12-month period . . . due to a serious health condition that makes the employee unable to perform the functions of [her] position," 29 U.S.C. § 2612(a)(1)(C), and upon the employee's return from FMLA leave, "to be restored by the employer to the position of employment held by the employee when the leave commenced; or to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment," *id.* § 2614(a)(1).

The FMLA also "contains *proscriptive* provisions that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006) (citation omitted). "Known as 'retaliation' or 'discrimination' claims, causes of action alleging violations of these proscriptive rights arise under 29 U.S.C.A. § 2615(a)(2), which states that '[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.'" *Id.* "To succeed on a claim of retaliation, a plaintiff must show 'that she engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to the plaintiff's protected activity.'" *Wilson v. Nash Edgecombe Econ. Dev., Inc.*, No. 5:19-CV-322-FL, 2020 WL 5594538, at *17 (E.D.N.C. Sept. 18, 2020) (quoting *Yashenko*, 446 F.3d at 551). Importantly, a close temporal relationship between the plaintiff's exercise of their FMLA rights and the adverse action is sufficient to establish causality at the motion to dismiss stage. *Futrell v. Blanton's Air, Plumbing, & Elec., LLC*, No. 5:23-CV-739, 2024 WL 3852132, at *5 (E.D.N.C. Aug. 16, 2024) (citing *Laing v. Fed. Express Corp.*, 703 F.3d 713, 720 (4th Cir. 2013) (close temporal relationship sufficient to

5

establish a *prima facie* case of causality at the motions stage)); *see Wright v. Hertford Cnty. Bd. of Educ.*, No. 2:23-CV-30-D, 2024 WL 85926, at *13 (E.D.N.C. Jan. 8, 2024) (finding plaintiff plausibly alleged causation where he pleaded his employment was terminated on August 17, 2021 after taking FMLA leave from May 25, 2021 to June 11, 2021) (citing *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)) (additional citation omitted).

Here, Small's FMLA retaliation claim against Smithfield Foods is sufficient to survive frivolity review. Small has attached documentation to his complaint that indicates that he engaged in the protected activity of taking FMLA leave, [DE-1-13] at 3, 6, and he has also alleged that his employer terminated him in retaliation on the day that his leave ended, shortly before he was scheduled to return to work, [DE-1-3]; [DE-1-6]. It is undisputed that termination is an adverse employment action, *Lands v. City of Raleigh*, No. 5:21-CV-491-BO, 2022 WL 2182167, at *3 (E.D.N.C. June 16, 2022) (citing *Yashenko*, 446 F.3d at 551), and Small has plausibly pleaded that the adverse action at issue occurred within two days of his protected FMLA leave period coming to an end. Thus, the two events are sufficiently close to establish a *prima facie* case of causality on frivolity review, *see Futrell*, 2024 WL 3852132, at *5–6, and while questions remain regarding whether other legitimate, non-discriminatory reasons for Small's termination existed, those would be better addressed in a fully briefed motion to dismiss. Accordingly, it is recommended that Small's FMLA retaliation claim against Smithfield Foods, Inc. be allowed to proceed. However, because Small has not alleged that he was employed by either Sedgwick Claims Management Services, Inc. or Allied Universal Security Services, it is recommended that his FMLA retaliation claims against these defendants be dismissed. *See Wilson*, 2020 WL 5594538, at *17 (stating that, to successfully plead an FMLA retaliation claim, a plaintiff must show that "[her] *employer* took adverse action against [her]") (emphasis added).

6

Turning to the state law claims, charitably read, Small has attempted to plead tortious interference with his employment contract against Smithfield Foods and Allied Universal, and negligent hiring, training, and supervision, also against Smithfield and Allied Universal. *See* [DE-1-1]; [DE-1-17]. Beginning with the tortious interference claim, to survive a motion to dismiss, Small must plausibly allege that (1) a valid contract existed between himself and a third party (here, Smithfield Foods); (2) Defendants knew of the contract; (3) Defendants intentionally induced the third person, i.e., Smithfield, not to perform the contract; (4) Defendants acted without justification; and (5) Small suffered actual damages as a result. *See Johnson v. Town of Smithfield*, No. 5:23-CV-349-D, 2024 WL 1336466, at *27 (E.D.N.C. Mar. 28, 2024) (citing *Benjamin v. Sparks*, 173 F. Supp. 3d 272, 289–90 (E.D.N.C. 2016), *aff'd*, 986 F.3d 332 (4th Cir. 2021); *United Lab'ys, Inc. v. Kuykendall*, 322 N.C. 643, 661 (1988) (quotation omitted)).

Here, Small alleges, at most, that he had a valid contract with Smithfield Foods as an at-will employee and an Allied Universal Security Services security guard[3] interfered with that contract by (1) engaging in an altercation with him, (2) falsely representing to Smithfield that an altercation occurred in a particular manner, or (3) allowing Smithfield to report that an altercation occurred in a particular manner. *See* [DE-1-3]; [DE-1-6]; [DE-1-14] at 4–5, 10. However, considering that at the heart of Small's complaint lies the allegation that Smithfield used this altercation as a pretext to terminate Small's employment in retaliation for him taking FMLA leave, even viewing the complaint in the light most favorable to Small, he has not plausibly pleaded that Allied Universal Security Services intentionally induced Smithfield not to perform its contract

---

[3] Small's alleged facts involving Sedgwick Claims Management Services pertain to their processing of Small's FMLA leave requests and their alleged spoliation of Small's FMLA-related records following his termination. *See* [DE-1-7]. Thus, even liberally construed, Small has not plausibly pleaded that Sedgwick intentionally induced Smithfield to terminate his employment contract.

7

with him. *See Johnson*, 2024 WL 1336466, at *27 (no tortious interference with contract claim where outside parties reported plaintiff's allegedly false conduct to employer and employer initiated its own investigation based on those claims, ultimately leading to plaintiff's termination). Instead, if anything, Small has alleged that his termination occurred because Smithfield, a party to Small's employment contract, wished to terminate the contract, which also cannot form the basis of a tortious interference claim. *See McLucas v. Home Depot U.S.A., Inc.*, No. 5:19-CV-437-FL, 2020 WL 6326097, at *4 (E.D.N.C. Oct. 28, 2020) ("North Carolina decisions and federal case law interpreting North Carolina law have held consistently that a party to a contract cannot tortiously interfere with that contract.") (quoting *Waters v. Collins &Aikman Prods. Co.*, 208 F. Supp. 2d 593, 595 (W.D.N.C. 2002) (citations omitted)); *Exclaim Mktg., LLC v. DIRECTV, Inc.*, No. 5:11-CV-00684-FL, 2012 WL 3023429, at *4 (E.D.N.C. July 24, 2012) ("[A] party to a contract cannot be liable for tortious interference."). Accordingly, both of Small's tortious interference with contract claims should be dismissed.

Finally, turning to Small's claim against Smithfield and Allied Universal for negligent hiring, training, and supervision, to prevail on a motion to dismiss, he must plausibly plead the following:

> (1) the specific negligent act on which the action is founded . . . (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight and supervision, . . . ; and (4) that the injury complained of resulted from the incompetency proved.

*Vaughn v. Transdev. Servs., Inc.*, 179 F. Supp. 3d 559, 566 (E.D.N.C. 2016) (quoting *Medlin v. Bass*, 327 N.C. 587, 590–91 (1990)). Notably, a plaintiff's burden in pleading these claims is a high one, and "only those cases involving notoriously unsuitable employees or allegations of

8

misconduct repeatedly ignored by an employer have met these elements." *M.H. v. Onslow Cnty. Bd. of Educ.*, No. 7:16-CV-00069-FL, 2016 WL 5678402, at *3 (E.D.N.C. Sep. 30, 2016) (quoting *Davis v. Matroo*, No. 5:13-CV-00233-BO, 2013 WL 5309662, at *5 (E.D.N.C. Sept. 19, 2013)) (citation omitted).

In the instant case, Small has failed to assert a negligent hiring, training, and supervision claim against either Allied Universal or Smithfield, primarily because he has failed to plausibly plead facts pertaining to the first, second, and third elements.[4] In his complaint and the attached exhibits, Small spends a great deal of time pleading facts related to Allied Universal's operational practices *in general*, but the only specific information he provides regarding the security guard he got into an altercation with is that "[t]his contractor had previously been reported by [Small] for workplace targeting." [DE-1-8]. Additionally, in describing the altercation that allegedly precipitated Small's termination, Small merely details a situation where a security guard, who was apparently armed at the time, "confronted" him when he tried to enter Smithfield's property and verify that his employee badge still worked. [DE-1-3]; [DE-1-6]; [DE-1-14] at 4–5, 10. In other words, Small has alleged few to no facts in support of his legal contentions; he has failed to plausibly plead that the Allied Universal security guard committed any tortious acts, much less that his actions were the latest in a pattern of incompetency of which Allied Universal and Smithfield had reason to know. *See L.C. by and through Dunbar v. Charter Schs. USA at Cary, LLC*, No. 5:24-CV-66-FL, 2024 WL 3470835, at *4 (E.D.N.C. July 19, 2024) (no negligent

---

[4] Small's claim against Smithfield may also be subject to dismissal because he has alleged that the security guard was an independent contractor employed by Allied Universal, not a Smithfield employee. *See Thomas-Boyd v. Rogers*, 1:21-CV-22, 2021 WL 2256274, at *4 (M.D.N.C. June 3, 2021) ("While the County defendants are correct that persons who hire independent contractors are generally not liable for the contractor's actions, that is a rule with exceptions.") (citations omitted); *Ostwalt v. Charlotte-Mecklenburg Bd. of Educ.*, 614 F. Supp. 2d 603, 609 (W.D.N.C. 2008) (citation omitted) ("North Carolina courts have determined that no claim for negligent supervision lies when the Defendant is not the employer of the individual who commits the tortious act.").

9

supervision claim where plaintiff "asserts that unidentified employees of defendants made him sit in a hallway without supervision, and wrongfully disciplined him," conduct that does not amount to a tort in North Carolina, and "fails to identify any inherent unfitness or previous improper acts by any identified employees, as required under the second element."). Accordingly, both claims for negligent hiring, training, and supervision should be dismissed.

## III. CONCLUSION

For the reasons stated above, it is recommended that Small's application to proceed *in forma pauperis* be allowed; all claims against Sedgwick Claims Management Services, Inc. and Allied Universal Security Services be dismissed; the state law claims against Smithfield Foods, Inc. be dismissed; and the FMLA retaliation claim against Smithfield Foods, Inc. be allowed to proceed at this time.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on Plaintiff. You shall have until **August 6, 2025** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. **If you do not file written objections to the Memorandum and Recommendation by the foregoing deadline, you will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such**

review. In addition, your failure to file written objections by the foregoing deadline will bar you from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

So ordered, this the 23rd day of July, 2025.

Robert B. Jones, Jr.
United States Magistrate Judge

11

Case 5:25-cv-00331-D-RJ    Document 6    Filed 07/23/25    Page 11 of 11